Green, J.
delivered the opinion of the court.
The facts disclosed in the answer of Mynatt, consti-tuté the only ground upon, which this court can decree for the complainant; it will therefore be useful to recapitulate the most prominent of them. From the statements of the answer, it appears that a bill had been filed by the distributees of the estate of John Harrison, deceased, against Rose, the present complainant, and Mrs. Harrison, (of whom he had purchased,) for their distributive shares of the negro man Nathan, whom they alleged had not been divided. Rose employed Mynatt as his lawyer in the case, and as a fee, agreed to give him the boy Daniel, on condition he succeeded; but in the event he failed of success in the suit, he was to have nothing. This was on the 18th of December, 1830. In a few days afterwards, and. when the bond and security for the forthcoming of Nathan was to be executed, Mynatt sent for Rose, and told him he must change the contract; that he would not be security for the forthcoming of Nathan unless he, Rose, would execute an absolute bill of sale for Daniel for the fee; that he would not attend as his counsel upon an uncertain fee, and be security also that Nathan should be forthcoming. Upon this declaration of Mynatt, Rose executed the absolute bill of sale required,, for the boy Daniel; and this too although Nathan was in Veal's hands, standing as security for his forthcoming.
The question arises, whether, upon this statement of the answer, this contract can stand? When it was made, the parties were not on equal terms. Before this, My-natt had been employed as a lawyer by Rose, and when this contract was made, the relation of attorney and client existed. The first engagement of Mynatt in the case was on the 18th of December, and the bill of sale was executed on the 25th of' that month. The subject matter of the controversy was for something less than the *35 whole value of the negro Natban. The fee first agreed . , , . . . . ° to be given was altogether contingent, and its value cannot be accordingly estimated. But it was not at any rate worth more than half the price of Daniel, supposing the chances of success equal. Even that sum was excessive compensation for the services to be performed. But by the second contract which Rose was induced to make, a compensation was agreed to be given for a fee, equal in value to the subject matter in dispute in the suit. It is true, the defendant, Mynatt, in his answer, says, that Rose’s alleged fraudulent bill of sale from Mrs. Harrison for the eight negroes was to be tested. But this could not be. If the Harrisons were entitled to distributive shares of Nathan because he had not before been included in the division, they would succeed in obtaining it, however competent Mrs. Harrison might be to contract, or however fair the bargain. Mrs. Harrison could communicate no more title to Rose than she had herself. No question as to whether the contract with Mrs. Harrison was fair, or whether she was competent to contract, could have been so involved in that suit as to test Rose’s title to the eight negroes. It is also stated in the answer, that Mynatt agreed to attend to any other suit that might be brought for these negroes. Mrs. Harrison’s children and grand children could have no claim to those negroes during her life, and the probability of any suit for them was quite a remote contingency; that part of the agreement, on the part of Mynatt, possessed but little value, and was entitled to very little consideration in estimating his services. Fifty dollars would have been an ample fee in the cause then pending, and the negro boy agreed to be given was worth at least six times that amount. Here then is the plain case, of an attorney agreeing with his client, who was under his influence, to whom he stood in a confidential relation, who thus circumstanced, and by means of a threat that he would not be his security, agreed to give six times as large a fee as the services were fair *36 ly worth. Can such a contract stand? No court has ever supported such an agreement. Lord RosJyn in Newman vs. Paine, (2 Vesey, Jr., 203,) says, “it is put commonly upon one of the cases which hold, that upon general considerations of policy, the court, without entering into the means used, or the character of the parties, but merely upon the relation of attorney and client, will not suffer it to stand.” In the same case, his lordship says “I take up the facts upon that protection that every court owes to the suitors of the country, that there shall be peculiar restraint upon attorneys, and that they are not to deal with their clients upon exactly the same terms upon which men at large deal with each other.” Lord Hardwicke, in Warmsley vs. Booth, (2 Atk. 25, 217,) relieved against a bond given for an exorbitant fee by a client to his attorney, and directed the bond to stand as security for such services as the defendant had really done. It is true, circumstances of hardship are stated in that case, but lord Roslyn stated in the case before referred to, that Lord Hardwicke acted on the general ground of public policy. It is a settled rule, therefore, that while the relation of attorney and client exists, the attorney stands in such a situation of confidence, that he will not be permitted to take from his client beyond a fair professional demand. For otherwise, it would be frequently in his power, by using the influence which he has the means of acquiring over his client, to extort most exorbitant compensation; and, if unrestrained, would open a door to numerous frauds. Newland on Contracts, 453.
But it is said the court cannot decree in this cause, because the bill is not framed with a view to the aspect of the case as we have considered it. It is true, that the case made in the bill is entirely different from the one we have discussed, as being presented in the answer; and it is much to be regretted that the bill was not a* mended upon the Chancellor’s suggestion, so as to em *37 brace the truth of the case. As a general rule, m a r court ot equity as well as a court oi law, the party must recover according to his allegation, if at all. But this rule is not so strictly enforced in equity as at law. New-land on Contracts, 163. And in the case of Mortimer vs. Orchard, (2 Vesey, Jr. 243,) where the bill stated one case, and the proof another, and the answers a different one from them both, Lord Roslyn decreed upon the statements of the answers. Although the general rule is, as argued by the defendant’s counsel, yet the above case shows that. there are exceptions, and the Chancellor doubtless would have decreed upon this answer had his mind been directed to the foregoing view of this case.
We are all of opinion, therefore, that in the statement of the, answer, a case is made demanding the interposition of the court to relieve the complainant, and that notwithstanding the case stated in the bill is different, and is unsupported by the proof, we are authorized to decree upon the answer.
We are therefore of opinion that the decree be reversed, that the contract by which Mynatt engaged to defend any suit hereafter to be brought, and the bill of sale for Daniel be cancelled, and that the defendant, Mynatt, deliver up to the complainant the said negro Daniel upon the payment of fifty dollars for a fee in said cause, but that until said payment be made, the said negro Daniel stand as security for the fifty dollars, and that the. complainant pay the costs of the chancery court, and the defendant the costs of the appeal.
Decree reversed.